GENE VICK v. THE STATE.

No. 18638. Delivered January 20, 1937.
Rehearing Denied March 24, 1937.

The opinion states the case.

*Price & Moss*, of Post, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for burglary; punishment being assessed at two years' confinement in the penitentiary.

On April 6th, 1935, a house belonging to C. Sears was burglariously entered and a number of sacks of seed of various kinds stolen. The sacks were sewed with a peculiar kind of twine and a hole in one of the sacks stopped up with tissue paper. Some of the seed were found at the store of Elkins in Grayford. Positive identification was made of the sack with the hole in which the tissue paper had been placed. On April

8, 1935, Elkins bought from appellant and Loland Flippen some grain seed of various kinds, some of the seed being in the sack mentioned. C. A. Magee was present with appellant and Flippen when the seed was sold to Elkins. The sale was made in the usual course of business, no circumstances being presented to cast suspicion on the transaction. The confession of appellant was introduced in evidence, in which appellant admitted that he went alone to Mr. Sears' place, loaded the seed in a truck belonging to Flippen, and hauled them to a pasture where he unloaded them; that he told Flippen about the seed, and on the night of April 6th the two of them went to the pasture and again loaded the seed in Flippen's truck. Some of the seed were sold in Mineral Wells and some in Grayford. While appellant's confession does not admit a breaking to secure the seed from Sears, the fact of a burglarious entry is established by the testimony of the owner. Magee had formerly worked for Flippen, who was in the grain business, but at the time of the burglary Magee was working at Mineral Wells. Magee testified that as he was going home from his work on Sunday, April 7th, he saw appellant and Flippen in a truck which appellant was driving; that they stopped and talked to witness who learned they wanted to sell the grain which was in the truck, and that witness told them they could probably sell it at Grayford; that on Monday he went with them to Grayford, assisted in the unloading of the grain which they sold to Elkins, and received two dollars for the assistance rendered; that he thought the seed belonged to Flippen and was not informed that they had been stolen.

Bill of exception number one simply reserves complaint at the failure of the court to instruct a verdict of not guilty. No error occurs by reason of such refusal.

In the confession of appellant the warning appears to have been given by J. S. Smith. The record shows that the confession was obtained while appellant was held in custody by the sheriff of Bell County, Texas. The witness Smith was sheriff of Terry County, Texas.

Bill of exception number two brings forward complaint because in the cross-examination of Mr. Smith the court declined to let appellant's attorney interrogate the witness regarding certain inquiries and transactions that occurred between appellant and other parties in the State of Oklahoma. It is apparent from the bill itself, as well as from the qualification of the trial court, that no inquiry was made in Oklahoma regarding the transaction under investigation in this case. It appears from

the bill that the trial judge advised counsel for appellant that if any statement was made in Oklahoma relative to the particular case then on trial he would permit all the facts surrounding it to be put before the jury, but unless there was something pertinent to the present case he would sustain objection to inquiries as to the transactions in Oklahoma. We find no error presented in the bill.

Bill of exception 3-A is lengthy, having been set out in question and answer form at the direction of the trial judge. It relates to an inquiry as to whether the warning to appellant at the time his confession was made was given by J. S. Smith, the sheriff, and whether the confession was made to him and other parties. We deem it unnecessary to set out at length the evidence elicited upon the point, but think it sufficient to say that the admission of the confession over objection urged was not erroneous.

It appears from bill of exception number four that appellant undertook to prove by two witnesses certain statements which appellant had made to them, giving his reasons why he had signed the confession in Bell County. The proposed testimony was rankest hearsay, and the court properly excluded same upon objection of attorney representing the State.

Appellant filed many exceptions to the court's charge, only one of which we think calls for a discussion, that being a complaint because the court did not submit to the jury the question as to whether the witness Magee was an accomplice witness. In support of the contention that such issue should have been submitted appellant cites Blake v. State, 96 S. W. (2d) 1111; Bickham v. State, 72 S. W. (2d) 1095, and Luck v. State, 67 S. W. (2d) 302. All of said cases turn upon the general rule that where one who has taken part in the commission of the offense endeavors by his own testimony to show his innocent intent, his relation to the crime becomes a question of fact, and the jury must be called upon to determine the issue as to whether or not he is an accomplice witness. However, it is an exception that when the innocent intent is shown by evidence other than that of the supposed accomplice the rule is otherwise. An examination of the cases mentioned makes it apparent that in all of them the evidence connected the witness claimed to be an accomplice either with the commission of the offense, or connected him with the fruits of the crime in such manner as raised the issue. We are not inclined to the view that such conditions are shown in the present case. That Magee had no connection with the offense of burglary is clearly shown

by the confession of appellant himself, who positively states that he alone went to the premises of Mr. Sears and hauled away the seed. It further appears from the record that Flippen was in fact in the grain business, and that Magee had formerly worked for him. Magee's testimony is that his first connection or contact with appellant and Flippen was in the daytime upon the streets of Mineral Wells, Texas, they being in a truck which Magee knew belonged to Flippen, said truck being loaded with grain; that at the request of the parties named Magee advised them that he thought they could possibly dispose of the grain at Grayford, and went with them to that point and openly aided them in the sale of a part of the grain. Nothing appears in this case indicating that the grain was sold for a price below the market value which would have put Magee upon notice, or put him upon inquiry as to the honesty of the transaction. In fact, some of the grain was not sold to Mr. Elkins because his offer was not regarded as sufficiently high by Flippen and appellant. We think the facts mentioned distinguish this case from those relied upon by appellant, and bring it within the rule illustrated in Pauly v. State, 93 Texas Crim. Rep., 183, 246 S. W., 375, and Holmes v. State, 68 S. W. (2d) 189.

Finding no error in the record which calls for a reversal, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—By brief and oral argument appellant urges that we were wrong in holding the facts in this case not to call for the submission to the jury of the issue as to whether witness Magee was an accomplice. We have again reviewed the record. The alleged burglary took place on the night of April 6th in Terry County, some two hundred miles from Mineral Wells. Magee lived in Mineral Wells. On April 7th Magee was on his way home in Mineral Wells when appellant and Flippen came along in a truck driven by appellant. Magee had worked for Flippen in Terry County at some time before that, driving a truck, hauling grain, feed, etc., Flippen being engaged in that business. Appellant and Flippen spent the night of April 7th at Mineral Wells in a tourist camp. They saw Magee the next morning, and told him that they had grain and feed in the truck, and he told them that Grayford, Palo Pinto County, was a good market for feed, and that he had been selling some there. Having nothing else to do, Magee

went with said parties to Grayford, and took them to the feed store where he had dealt, and they sold the seed and feed. They paid Magee two dollars for his said service in going with them and helping them. We have given every fact in this record which we have been able to find affording any support to the claim that Magee was an accomplice, and are still of the opinion that the court was not called on to submit the issue above mentioned.

We have examined the authorities cited by appellant in his motion, and deem them not to support his contention. He relies specially upon Crowell v. State, 24 Texas Crim. App., 404. In that case this court merely said that the question of Moss being an accomplice should have been submitted to the jury. While we find nothing in the record of that case suggesting that all the evidence going to show Moss an accomplice was set out,—we do find that the alleged stolen animal was tied in the woods on Moss' place after it was stolen, and that it was killed there, and the head, hide, feet and entrails were buried on said place and three-quarters of the alleged stolen beef were taken to Moss' house. Moss was a brother-in-law of the accused who seems to have been living with Moss. Moss seems to have concealed his knowledge of these facts. We are in hearty accord with the suggestion of the court that the proposion of Moss being an accomplice should have been submitted, but see nothing in the Crowell case contrary to what we have here held. This record appears wholly barren of facts suggesting that Magee was a party to the burglary by means of which the grain was obtained, or that Magee knew the grain was stolen, or that he aided or assisted Flippen and Vick with any notice or knowledge of such facts.

Appellant also complains that the evidence is not sufficient to show that a burglary was committed. The owner of the alleged burglarized building testified that when he left home on the evening before the burglary was committed that night all the doors were fastened. He described the fastenings. He testified that the wind could not have blown the doors open. From his description of the fastenings it appeared impossible for the doors to have come open except by human agency.

Not being able to agree with appellant's contentions, the motion for rehearing is overruled.

*Overruled.*