JOBIE KING v. THE STATE.

No. 19850.   Delivered October 26, 1938.
Rehearing denied November 23, 1938.

The opinion states the case.

*Shead & Aycock,* of Longview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

Eugene King v. The State, Opinion No. 19848, this day delivered [page 378 of this volume], is a companion case. In that case we reversed the judgment of conviction for the reason that the trial judge failed to instruct the jury that P. H. Hamilton, Jr., a witness for the State, was an accomplice. In the present case, upon testimony substantially the same as that revealed in the case of Eugene King, the trial court properly instructed the jury that Hamilton was an accomplice witness as

a matter of law. Appellant contends that the testimony is not sufficient to corroborate Hamilton.

That some one stole a cow from the pasture of Grant Williams on the night of the 25th of September, 1937, was undisputed. Shortly after the theft Williams recovered his cow from the pasture of Charlie Rutland. Mr. Rutland testified that he found the cow in Prince Bush's field and drove her into his (witness') pasture. She had been beaten and one of her eyes was severely injured. He later learned that she belonged to Williams and advised him of her presence in his pasture. On the night of the theft appellant, Eugene King and the witness P. H. Hamilton, Jr., went to the home of Jack Daniels in Marshall, arriving there shortly before midnight. Daniels testified that appellant and Eugene King offered to sell him a cow. He asked where the animal was located and was advised that it was above Red Oak, where it had fallen off of the truck. Appellant and Eugene King told him that he could have the animal at his own price. His reply was that he would not go to the place where she was located at night. However, he stated to them that he would look at the cow the next day. At this juncture appellant and Eugene King said that they would be compelled to move her immediately. He at no time saw said cow, it appearing that she was recovered before he had the opportunity to look at her. The foregoing, in substance, constitutes the testimony of the nonaccomplice witnesses.

The accomplice witness Hamilton testified that he went with appellant and Eugene King to Williams' pasture where they loaded a cow on the witness' truck. Appellant and Eugene King told him that they had traded for the cow, and agreed to pay him three dollars and a half for hauling her to Marshall. In loading the animal they beat her to some extent. As they were proceeding away from the Williams pasture appellant and Eugene King urged him to drive faster, saying that they were afraid Prince Bush, who lived in a near-by house, would see them and report the matter to Grant Williams. The witness then required appellant and his companion to unload the animal. After she had been unloaded and tied they offered the witness a dollar to drive them to Jack Daniels' house in the city of Marshall, at which place appellant and Eugene King tried to sell the stolen animal to Daniels. Although present when such effort was made to sell Daniels the cow, the witness gave no word of warning, but apparently was anxious that the sale be made in order that he might receive at least a dollar of the proceeds.

We are unable to agree with appellant that Daniels was an accomplice witness, or that the testimony raised an issue requiring an instruction to the jury, under which they would have been called upon to determine whether he was an accomplice. Looking then to the testimony of Daniels in an effort to determine whether the corroboration of Hamilton is sufficient, we find appellant, Eugene King and Hamilton together at Daniels' home three or four hours after the theft, with appellant and his brother Eugene endeavoring to sell a cow which they stated had fallen from the truck near Red Oak. Also we have their statement to Daniels that he might have the cow at his own price as they would be compelled to move her at once. Again, there is the further nonaccomplice testimony that when the animal was recovered she appeared to have been severely beaten. This bit of testimony corroborates the statement of the accomplice that they beat the cow when they were loading her into the truck. There is nothing in the record to suggest that the parties were dealing with any animal other than the one that had been taken from the pasture of Grant Williams. It would seem improbable that the accomplice, without aid, could have loaded the cow in his truck. We think the testimony of the nonaccomplice witnesses, in its entirety, tends to connect the appellant with the commission of the offense.

Appellant denied that he had any connection with the commission of the offense, and gave testimony raising the issue of alibi.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant complains in his motion for a rehearing on two grounds: First, because the witness Hamilton was an accomplice, or at least the court should have permitted the jury to determine whether or not he was such accomplice under proper instructions. In answer thereto we find in paragraph four of the court's charge that he instructed the jury that such witness was an accomplice, and that his testimony of necessity had to be corroborated.

The second ground offered in the motion was because the

court refused to allow the witness Harry McGee to testify that he would not believe the witness Daniels under the sanctity of an oath in a court of justice. The court in his qualification to such bill states that no such question was asked the witness McGee.

Under the circumstances we see no error reflected in such motion, and same is overruled.